IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
August 5, 2003 Session

## STATE OF TENNESSEE, DEPARTMENT OF CHILDREN'S SERVICES v. T.L.C., ET AL.

Appeal from the Juvenile Court for Coffee County
No. 554-00J    Timothy R. Brock, Judge

No. M2003-00509-COA-R3-JV - Filed December 3, 2003

In this appeal the Appellant, R.L.P, Sr., argues that the Trial Court erred in terminating his parental rights to his son, R.L.P., Jr.  We vacate the judgment of the Trial Court and remand.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court Vacated; Cause Remanded**

HOUSTON M. GODDARD, P.J., delivered the opinion of the court, in which HERSCHEL P. FRANKS and CHARLES D. SUSANO, JR., joined.

James H. Henry, II, Tullahoma, Tennessee, for the Appellant, R.L.P., Sr.

Paul G. Summers, Attorney General and Reporter, and Elizabeth C. Driver, Assistant Attorney General, Nashville, Tennessee, for the Appellee, State of Tennessee, Department of Children's Services

## OPINION

The child in this matter, R.L.P, Jr., was born July 13, 2000.  In late November of 2000 the Department of Children's Services ( hereinafter "the Department") in an investigation upon referral became aware that  R.L.P., Jr., who has had asthma since birth, was being kept in an apartment which was unlighted and cold, electrical service having been temporarily discontinued the previous day.  At the time the whereabouts of his mother, T.L.C., were unknown and he was in the sole care of his father, R.L.P., Sr.  According to Debra Phillips, the Department employee conducting the investigation, R.L.P., Jr. "felt warm like he had a fever" and "had a wheezing sound when he breathed."  R.L.P., Sr. indicated that he felt his son needed to go to the doctor as soon as he could make an appointment; however, it appears that he was without transportation.

On December 4, 2000, the Department filed a petition for temporary custody of R.L.P., Jr. in the Coffee County Juvenile Court.  Based upon its finding that there was probable cause to believe

that R.L.P., Jr. was a dependent and neglected child, the Trial Court granted the Department's petition. R.L.P., Jr. was subsequently transferred to a foster home in the care and custody of R.L.P., Sr.'s cousin and was thereafter transferred to another foster home where he was still residing at the time of trial.

The Department began working with and monitoring the family and permanency plans were approved by the Court with the designated goal of reuniting R.L.P., Jr. with his parents. However, the Department ultimately concluded that parental rights should be terminated and on May 1, 2002, it filed a petition seeking that result.

Trial of the petition to terminate was held on August 22, 2002. The Trial Court found that the Department's petition relied upon three grounds for termination - abandonment, substantial non-compliance with the permanency plan and persistence of those conditions which were present at the time of R.L.P., Jr.'s removal from his parents. The Court found that the Department had failed to prove that R.L.P., Jr. was abandoned or that there was substantial non-compliance with the permanency plan. The Court did, however, determine that conditions present at the time of the child's removal persisted at the time of the petition to terminate. After making this determination, the Court further determined that it would be in R.L.P. Jr.'s best interest if parental rights were terminated and granted the Department's petition. Thereafter, R.L.P., Sr. filed this appeal[1].

Although several issues have been presented for our review, it is our determination that this matter will be resolved by our decision as to but one of these issues which is restated as follows:

Is there clear and convincing evidence to support the Trial Court's determination that there are grounds for termination in this case under T.C.A.(g)(3)(A)?

Our standard of review in this non-jury case is *de novo* upon the record of the proceedings below and there is no presumption of correctness with respect to the Trial Court's conclusions of law. *Campbell v. Florida Steel Corp.*, 919 S.W.2d 26 (Tenn. 1996) and T.R.A.P. 13(d). The Trial Court's factual findings are, however, presumed to be correct and we must affirm such findings absent evidence preponderating to the contrary. *Union Carbide Corp. v. Huddleston*, 854 S.W.2d 87 (Tenn. 1993).

Noting the U. S. Supreme Court's decision in *Santosky v. Kramer*, 455 U.S. 745 (1982), this Court has hitherto recognized that "[d]ue process requires that the parent's conduct allowing the state to terminate the parent-child relationship must be established by clear and convincing evidence." *Stokes v. Arnold* 27 S.W.3d 516 (Tenn. Ct. App. 2000). "Clear and convincing evidence" is evidence which "eliminates any serious or substantial doubt concerning the correctness of the conclusions to be drawn from the evidence." *O'Daniel v. Messier*, 905 S.W.2d 182 (Tenn.Ct. App. 1995).

---

[1]T.L.C. does not join in this appeal.

T. C. A. 36-1-113(c) requires that termination of parental rights be based upon the following:

(1) A finding by the court by clear and convincing evidence that the grounds for termination or parental or guardianship rights have been established; and
(2) That termination of the parent's or guardian's rights is in the best interests of the child.

T.C.A. 36-1-113(g) sets forth the various grounds upon which initiation of termination may be based and includes the following ground which was relied upon by the Trial Court in the instant matter:

(3)(A) The child has been removed from the home of the parent or guardian by order of a court for a period of six (6) months and:
   (i) The conditions which led to the child's removal or other conditions which in all reasonable probability would cause the child to be subject to further abuse or neglect and which, therefore, prevent the child's safe return to the care of the parent(s) or guardian(s), still persist;
   (ii) There is little likelihood that these conditions will be remedied at an early date so that the child can be safely returned to the parent(s) or guardian(s) in the near future; and
   (iii) The continuation of the parent or guardian and child relationship greatly diminishes the child's chances of early integration into a safe, stable and permanent home.

R.L.P, Sr. concedes that R.L.P., Jr. has been removed from the home for six months but he denies that there is clear and convincing evidence in this case which supports the Trial Court's finding of the persistence of those conditions which led to his son's removal or "other conditions which in all reasonable probability would cause the child to be subject to further abuse or neglect."

The findings of the Trial Court with respect to persistence of conditions are incorporated into its final order of November 4, 2002, as follows:

The last ground would be persistent conditions, the conditions which were present at the time this child was removed. As I said earlier, there was obviously an inability for [R.L.P., Sr.] to provide for this child. There was an inability to have adequate money to provide a suitable home for this child. There was apparently an inability or at least some concern about providing medical attention in the appropriate manner, to provide appropriate food and shelter, the basic necessities for this child.

At this point [T.L.C.] was not at the home. She had chosen to leave for whatever reason and there was no evidence to suggest why she left. She just testified she left and had gone with her parents or had gone with some friends.

Those are the conditions which we have to look to see if they persisted over a period of time up until the filing of the petition.

The facts are as follows that I find to be pertinent and proven by clear and convincing evidence, the facts as it relates to this particular ground. [R.L.P., Sr.] has had five different residences since this case began. [T.L.C.] has had seven different residences since this case began in 2000. While [T.L.C.] has worked – it appears that [T.L.C.] has worked on a more consistent basis than [R.L.P, Sr.], but her employment has been sporadic. At times she has worked more than one job. I think she has made a good faith effort to maintain employment.

[R.L.P., Sr.'s] employment history is more checkered. He is sporadic at best. At one point he apparently voluntarily left employment on at least two occasions, one at Desa and one at Calsonic, both of which were apparently fairly good-paying jobs and his reason at least for one of those occasions was that he did not have transportation.

Neither parent has completed their high school education. The child that's the subject of this litigation, [R.L.P., Jr.] is a special needs child for speech and hearing therapy. The visitation has been inconsistent. I'm speaking primarily of the time frame December of 2000 to April of 2002. There have been sporadic inconsistent visitation.

I feel that there have been times when both [R.L.P., Sr.] and [T.L.C.] have attempted to contact Children's Services and there may have been some confusion, but it's obvious that at other times that simply visitation was not exercised. How many times those are, I can't tell. I don't think anyone could make a determination of that.

The separation of [R.L.P., Sr.] and [T.L.C.] was a contributing factor and a condition which existed in December of 2000. There has been since December of 2000 at least one other separation which occurred in February of 2002.

[R.L.P., Sr.] does not have a driver's license at this point – they are suspended – and that has apparently contributed to his inability to find consistent employment. [T.L.C.] has been without a valid license for some time, has been aware of it for a shorter period of time, but apparently has taken some measures to get that problem straightened out.

What I'm going to find based upon those facts is that the conditions which existed December 2000 have persisted and existed as of April 2002. I think the facts justify that finding. Those primary conditions being the separation, the failure to have steady employment, and the failure to have a stable, adequate

-4-

home. Those are the primary conditions that have existed on and off for approximately two years, December until April of 2002.

As we have noted, the child was initially removed from the home because the home was unlighted and cold as a result of the power having been cut off the previous day and because he appeared to be ill and his father was without means of transporting him to a doctor. At the time of removal R.L.P., Sr. and T.L.C. had separated and T.L.C. was absent from the home. Although the Court appears to indicate that one of the conditions which led to the removal was the inability to provide appropriate food, we do not agree that the record supports that finding. In regard to the conditions at the time of removal we also note the following testimony of Department investigator, Debra Phillips:

Q In other words, your investigation was based on the fact that you had a report that there was an inadequate environment. You went there and you found what you felt was, in fact, an inadequate environment.

A Correct.

Q It was cold inside. There was no heat and light and so you further investigated.

A Correct.

Q Okay. But if there had been heat and light in the place, you probably would have said, "Well, okay, maybe he needs a little bit of help, but that's it." Is that my understanding?

A Correct.

Q Okay. So after you did your investigation, it's my understanding that the primary concern then was the capability of the parents in taking care of [R.L.P., Jr.]?

A Correct.

While we have no doubt about the propriety of the initial removal in this case, we are at the same time compelled to note evidence of parental attention to the child at the time of removal. In this regard Ms. Phillips testified that R.L.P., Sr. had wrapped R.L.P., Jr. in multiple layers of clothing to keep him warm and that a piece of paper was posted on the refrigerator designating times when the child was fed. Ms. Phillips further testified that she has never doubted that R.L.P., Sr. loves his son and stated:

The problem is that [R.L.P., Sr.] at that particular time didn't seem to have skills to take care of a baby and keep that baby safe and healthy. It wasn't that he didn't care about the child.

In summary, it may be stated that the original conditions which led to the child's removal were the father's ignorance of parenting skills, the financial inability of the father to provide certain basic necessities for his child, and the absence of the mother as a result of the parents' separation and the resultant instability in the home.

We now review the findings of the Trial Court which it presented in support of its determination that grounds for termination of parental rights exist under T.C.A. 36-1-113(g).

The first condition designated by the Court is the fact that, since R.L.P., Jr. was removed from the home in December of 2000, the father has had five different residences and the mother has had seven different residences. This finding is confirmed by the parents' own testimony. However, we do not agree that the mere fact that the parents were living in multiple locations during the eighteen month period preceding trial denotes the existence of a condition that in all reasonable probability would cause R.L.P., Jr. to be subject to abuse or neglect. There is no proof that any of the residences in which either R.L.P, Jr. and T.L.C. lived during this period of time presented an environment that was either unsafe or unhealthy for their child. In fact, Jessica Johnson, the Department caseworker who handled this case from December of 2000 until June of 2001 and from April of 2002 until trial, confirmed that the parties maintain a "clean and loving home" and stated " The home is very clean. They've never had a problem with clean." Although there is testimony that one of the residences in which the parents lived with relatives of R.L.P., Sr. was crowded, there is no evidence that that residence or any other residence inhabited by the parents since removal presented an environment that was either unsafe or unhealthy.

The next condition referenced by the Trial Court is the sporadic employment record of each of the parents. R.L.P., Sr. testified that he works "occasionally" and is permanently registered with a staffing agency which places him for work when they have an opening. He further indicated that the jobs he acquires through this agency are of variable duration. It appears that the longest period of time that R.L.P., Sr. has held a job is one year. He lost this job as well as another job of relatively long duration which he had obtained through the agency because his car broke down and he could not secure alternative transportation. He did, however, testify without contest that he now owns a car and a truck. Although he testified that at the time of trial his driver's license had been suspended for failure to pay a ticket, he also testified that he has now paid the ticket and that he will have his license back once he has paid the reinstatement fee. T.L.C.'s license was also suspended but, according to her testimony, had been reinstated at the time of trial. R.L.P., Sr. attested that he was not employed at the time of trial and was most recently employed one month before trial doing carpet and furniture cleaning work. The record shows that T.L.C. has been employed off and on since R.L.P., Jr. was removed from the home. It appears from the record that at some point T.L.C. was working two part time jobs. It also appears that she was working during the first three months of 2002, was employed sporadically thereafter and was employed at the time of trial.

While we find that the record confirms the finding of the Trial Court that both parents have a sporadic work history, we do not agree that this constitutes a condition which warrants termination of their parental rights. Although at the time of R.L.P., Jr.'s removal, power to the home had been cut off because R.L.P., Sr. was unemployed and unable to pay for electrical services, there is no proof that, since that time, he has either had insufficient income to pay for electrical services or been without such services. Nor has it been demonstrated that he has had insufficient resources otherwise to provide for R.L.P., Jr. We do not agree that the Department has presented clear and convincing evidence that the sporadic employment of the parents would in all reasonable probability cause R.L.P., Jr. to be subject to abuse or neglect.

We next address the Trial Court's finding that neither parent has completed high school. Although T.L.C. testified that she only completed the eleventh grade and is endeavoring to obtain a GED, R.L.P., Sr. testified without dispute that he did graduate from high school. Thus, it is our determination that the Trial Court's finding that R.L.P., Sr. did not complete his high school education is erroneous. In any event, we do not agree that the fact that either parent failed to complete high school constitutes a condition that in reasonable probability would cause R.L.P., Jr. to be subject to abuse or neglect.

We next address the matter of the parents' visitation of R.L.P., Jr. after his removal from the home. As the Court indicates, the record is somewhat confusing as to frequency of visitation. The record shows that the Department began working toward extended visitation in September of 2001 and that overnight visitation for two consecutive nights began around Thanksgiving of that year. Visitation appears to have been regular throughout December of 2001 with weekly overnight visitation continuing; however, there seems to have been only one three day visit at the beginning of January. The most extensive period of time the parents failed to visit appears to have been a six week period which began in mid-February of 2002 when Ms. Conley informed the parents. that she would be proceeding with termination of their parental rights. Her testimony is that the parents became very upset at that point. "When I would attempt to speak with [T.L.C.] about it, she would say, "You've already decided you're taking him away. There isn't any reason for me to come visit." Apparently R.L.P., Sr. visited only once during this period. The record shows that visitation resumed the first of April, 2002, and from that time until the first of May there were six visits and two cancellations.

Although we do not disagree with the Court's finding that at times visitation was not exercised by the parents, we do not agree that their failure in this regard was so extreme under the circumstances as to constitute clear and convincing evidence of a condition which would in all reasonable probability cause R.L.P., Jr. to be subject to abuse or neglect.

The next factor we address which was referenced by the Trial Court is the instability of the parents' relationship. The record shows that, as of trial, this relationship had lasted for approximately four years and T.L.C. testifies that she and R.L.P., Sr. have separated a total of three or four times during that period. As to the period of time subsequent to the removal of R.L.P., Jr., the parents apparently remained separated from late November of 2000 until they reunited in June

of 2001. In January of 2002 the parents separated again but reunited in March of that year and were continuing to live together at the time of trial.

While the record confirms that there has been instability in the relationship between R.L.P., Sr. and T.L.C., we do not agree that this instability constitutes a condition which in all reasonable probability would cause R.L.P., Jr. to be subject to abuse or neglect. Testimony of Department employees indicates that R.L.P., Sr. is R.L.P., Jr.'s primary caregiver and that the two are well bonded. Ms. Johson testified regarding her observations during visitation as follows:

> I've noticed that [the parents] are generally happy to see him and he's happy to see them. I've noticed that [R.L.P., Sr.] is usually the one who holds [R.L.P., Jr.] and takes care of him during the visitation. He's usually the primary caretaker in the visits that I have observed and in the interactions I have observed.

Ms. Conley testified that during the period of time between September and December of 2001 on three days each week the parents would pick R.L.P., Jr. up in the morning and keep him all day. Ms. Conley further testified that during this period of time there would be days when R.L.P., Sr. would have the child by himself. Apparently the Department was satisfied with visitation and R.L.P.' Sr.'s performance during this period because it allowed overnight visitation to begin in late November of 2001. We also note the fact that R.L.P., Sr. had completed parenting classes by the end of March 2002. In view of all this we cannot agree that there is clear and convincing evidence that R.L.P., Jr. would in all reasonable probability be subject to neglect even in the event of the parties' separation.

The Department asserts that there have been instances of domestic violence in the home between R.L.P., Sr. and T.L.C. Although the Trial Court found that there was "some degree of domestic violence in the home" in conducting the "best interest" analysis required under T.C.A. 36-1-113(c)(2) it made no specific findings as to the circumstances of such violence and it did not support its determination that grounds exist for termination under T.C.A. 36-1-113(g)(3)(A) with this finding. In support of its assertion regarding the persistence of domestic violence in the home, the Department cites testimony of R.L.P., Sr. wherein he admits that he has pushed T.L.C. and that on one occasion he struck her. The Department does not state when these events took place nor is this indicated in the referenced testimony. When asked if he fights often with T.L.C., R.L.P., Sr. testified "Not anymore. I try to avoid that." While we condemn any violence which may have occurred between these parents, we do not find that the Department has presented clear and convincing evidence that domestic violence is a persisting condition in the home that in all reasonable probability will subject R.L.P., Jr. to abuse or neglect.

For the foregoing reasons the judgment of the Trial Court is vacated and the cause is remanded for proceedings consistent with this opinion. Costs of appeal are adjudged against the State of Tennessee, Department of Children's Services.

_____
HOUSTON M. GODDARD, PRESIDING JUDGE